1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

4

5

6

7

8

9

ROY ALAN O'GUINN,          )

          Plaintiff,          )

     v.          )

NEVADA DEPARTMENT OF          )
     CORRECTIONS, *et al.*,          )

          Defendants.          )
_____)

3:07-cv-00450-LRH-VPC

<u>REPORT AND RECOMMENDATION</u>
<u>OF U.S. MAGISTRATE JUDGE</u>

August 26, 2010

10

11

12

13

14

15

16

17

18

19

20

     This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#74) and plaintiff's motion for summary judgment, or in the alternative for partial summary judgment (#75 (*sealed*)).[1]  Plaintiff opposed (#78 (*sealed*)) defendants' motion, and defendants replied (#84).  Defendants opposed (#79 (*sealed*)) plaintiff's motion, and plaintiff replied (#83).  The court has thoroughly reviewed the record and the motions and recommends that defendants' motion for summary judgment (#84) be granted in part and denied in part and that plaintiff's remaining claim for breach of contract be dismissed for lack of jurisdiction.  The court further recommends that plaintiff's motion for summary judgment, or in the alternative partial summary judgment (#75) be denied.

21

**I.  HISTORY & PROCEDURAL BACKGROUND**

22

23

24

25

26

     Plaintiff Roy Alan O'Guinn ("plaintiff") is currently incarcerated at Nevada State Prison ("NSP") in the custody of the Nevada Department of Corrections ("NDOC") (#12).  Plaintiff brings his complaint pursuant to the Americans with Disabilities Act (42 U.S.C. §§ 12101, *et seq.*, 12117(a)) ("ADA"), §§ 504 and 505 of the Rehabilitation Act (29 U.S.C. § 794) ("RA"), and state law (#60).  Plaintiff names as defendants the NDOC; Howard Skolnik, NDOC Director; and Robert

27

28

     [1]     Refers to the court's docket number.

1    Bannister, NDOC Medical Director.  *Id.*  Plaintiff sues all named defendants in their official

2    capacities.  *Id.*

3            The relevant facts are undisputed.  In 1995, the Nevada State Legislature abolished the plea

4    of "not guilty by reason of insanity" and created a new plea of "guilty but mentally ill." *See Finger*

5    *v. State*, 27 P.3d 66 (Nev. 2001).  In October 2000, plaintiff, who suffers from organic brain

6    dysfunction, entered a plea of "guilty but mentally ill" on two felony counts of burglary, two felony

7    counts of sexual assault on a victim sixty-five years of age or older, and one gross misdemeanor

8    count of open and gross lewdness (#75, Ex. 9).  Part of that plea agreement contained language

9    which indicated that "[t]he purpose of [plaintiff's] plea of Guilty but Mentally Ill is NOT to

10   challenge the court's already entered findings of competency, but to insure that [plaintiff] receive[s]

11   appropriate treatment during [his] incarceration."  *Id.*[2]  Plaintiff was sentenced to life on all four

12   felony counts and one year on the gross misdemeanor with the sentences to run concurrently.

13   *O'Guinn v. State*, 59 P.3d 488, 851 (Nev. 2002).

14           In April 2001, plaintiff entered High Desert State Prison, and prison officials soon transferred

15   him to Lovelock Correctional Center ("LCC") (#75, Ex. 12).  LCC staff involuntarily admitted

16   plaintiff to the Mental Health Unit ("MHU") at Northern Nevada Correctional Center ("NNCC") on

17   July 12, 2001.  Prison medical staff treated plaintiff until his discharge from the unit on August 20,

18   2002.  The staff medical notes document plaintiff's behavior.  In sections of the medical chart where

19   staff describe plaintiff's behavior, entries note that plaintiff is "annoying to staff and peers by

20   constantly talking, making rude condescending remarks, arrogant intrusive" (#78, Ex. 10 (*sealed*)).[3]

21           In 2001, the Nevada Supreme Court in *Finger v. State*, 27 P.3d 66 (Nev. 2001), held that the

22   legislature's creation of a "guilty but mentally ill" plea in place of a plea of "not guilty by reason of

23   insanity" was unconstitutional under both the federal and state constitutions.  The court reasoned that

24   _____

25           [2]    Under the 1995 legislative amendments, the district court was allowed to suggest that the
     prison system provide certain types of treatment to the convicted individual.  *See Finger*, 27 P.3d at 70.
26

27           [3]    The court notes that mental health evaluation notes are often written in a format whereby
     the evaluator will first "describe" the patient's behavior (abbreviated by a "D"), then "assess" the behavior
28   (abbreviated by an "A"), and finally create a "plan" of treatment (abbreviated by a "P").  *See* Kettenbach,
     Ginge, *Writing SOAP Notes with Patient/Client Management Formats* 17 (F.A. Davis Co. 3d ed.).

1   due process mandated those found guilty of a crime must possess the requisite mental state at the

2   commission of the crime.  *Id.*

3         In 2002, plaintiff appealed directly to the Nevada Supreme Court, seeking to withdraw his

4   plea, and the court remanded the issue to the state district court with instructions that plaintiff be

5   allowed an opportunity to enter a new plea.  *Id.*  On July 30, 2003, plaintiff entered a new plea,

6   which provided that plaintiff "specifically waived the right to enter a new plea, stating to [the court]

7   that he did not want to withdraw from the plea he previously entered into" (#78, Ex. 7).

8         After his discharge from the MHU in 2002, mental health staff occasionally saw plaintiff,

9   yet plaintiff claims to have received minimal mental health treatment.  However, apart from his

10  mental health concerns, plaintiff continued to receive general medical care.  *See* #81-2, pp. 29-37

11  (*sealed*).

12        Plaintiff filed the operative complaint in this case on July 10, 2009 (#60), and defendants

13  answered on August 6, 2009 (#61).  Plaintiff alleges that defendants have denied him access to

14  mental health treatment because of his mental disability in violation of the ADA and RA (#10).  In

15  addition, plaintiff alleges that defendants have failed to provide adequate mental health treatment

16  during his incarceration, thereby breaching the terms of his plea agreement, which presumably

17  obligated defendants to provide mental health treatment.  *Id.*  The parties have engaged in discovery

18  and filed the instant motions for summary judgment on April 26, 2010 (#74, #75).

19                              **II.  DISCUSSION & ANALYSIS**

20  **A.    Discussion**

21         **1.       Summary Judgment Standard**

22        Summary judgment allows courts to avoid unnecessary trials where no material factual

23  disputes exist.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

24  The court grants summary judgment if no genuine issues of material fact remain in dispute and the

25  moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court must view

26  all evidence and any inferences arising from the evidence in the light most favorable to the

27  nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  However, the Supreme

28  Court has noted:

                                    3

1

2

3

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

4

5   *Beard v. Banks*, 548 U.S. 521, 530 (2006). Where reasonable minds could differ on the material

6   facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*,

7   477 U.S. 242, 251 (1986).

8       The moving party bears the burden of informing the court of the basis for its motion, and

9   submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex*

10  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party

11  opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth

12  specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule

13  56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party

14  who fails to make a showing sufficient to establish the existence of an element essential to that

15  party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-

16  23.

17  **B.    Analysis**

18       Defendants argue that plaintiff is merely challenging the adequacy of his medical treatment,

19  not discrimination based on a mental disability (#74, p. 14). Plaintiff responds that he is not

20  challenging the mere adequacy of medical care; rather, he contends he has received no care

21  whatsoever as a result of his disability (#78, p. 10). In addition, plaintiff maintains that defendants'

22  failure to treat his mental disability left him unaware of the availability of other prison programs and

23  thereby worked as an exclusion from such programs. *Id.* pp. 5-6.

24       Whether plaintiff's claim regarding defendants' lack of mental health treatment is properly

25  raised under the ADA or RA is critical to the claim going forward. The court examines this question

26  below.

27      **1.    Americans with Disabilities Act, Rehabilitation Act**

28      Title II of the ADA provides that "no qualified individual with a disability shall, by reason

4

1  of such disability, be excluded from participation in or denied the benefits of the services, programs,

2  or activities of a public entity, or be subjected to discrimination by any such entity.  42 U.S.C. §

3  12132.  Because Title II of the ADA was modeled after § 504 of the Rehabilitation Act of 1973,

4  "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and

5  the Rehabilitation Act." *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045, n. 11 (9th Cir.

6  1999); *see Coons v. Sec'y of the United States Treas.*, 383 F.3d 879 (9th Cir. 2004).  To establish

7  a claim under the ADA and RA, plaintiff must demonstrate that (1) he is a person with a disability;

8  (2) that he is otherwise qualified; and that the defendants' actions either (3) excluded his

9  participation or denied him the benefits of a service, program, or activity; or (4) otherwise subjected

10  him to discrimination on the basis of his physical handicap. *See Duffy v. Riveland*, 98 F.3d 477, 455

11  (9th Cir. 1996).

12  In *Pennsylvania Dep't of Corrs. v. Yeskey*, 524 U.S. 206 (1998), the Supreme Court

13  recognized that the ADA applies to state prisons.  "Although incarceration itself is hardly a

14  'program' or 'activity' to which a disabled person might wish access, mental health services and

15  other activities or services undertaken by law enforcement and provided by correctional facilities to

16  those incarcerated are services, programs, or activities of a public entity within the meaning of the

17  ADA." *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) (quotations omitted).

18  In this case, plaintiff produces significant evidence in the form of health records to

19  demonstrate that he possesses a mental disability that substantially limits life activity under the ADA

20  and RA.  *See* # 75, Exs. 1-3, 5-7, 10, 14, 22.  As to this element of the claim, no rational jury could

21  conclude that plaintiff is not disabled.

22  However, claims under ADA and RA require a showing of discrimination on the basis of this

23  disability.  Plaintiff contends that defendants have discriminated against him by denying him access

24  to mental health treatment.  According to plaintiff, his disability manifests itself in certain behavior.

25  Because of this uncontrollable behavior, he has been excluded from the MHU and denied mental

26  health treatment, programs for which he claims he was "otherwise qualified."  In addition to the

27  denial of mental health treatment, plaintiff argues that he has been denied participation in other

28  prison programs because defendants' failure to treat his mental disability has rendered him unaware

5

1    that such programs even exist.[4]

2    Although plaintiff's counsel frames plaintiff's deprivation of care as discriminatory, the court

3    remains convinced that plaintiff's claim sounds in medical negligence.  In other words, the case

4    involves differences of opinion regarding proper mental health treatment, not discrimination under

5    the ADA or RA.[5]

6    Although the Ninth Circuit has not squarely addressed the issue, other circuits have held that

7    the ADA and RA do not create a federal cause of action for prisoners challenging the medical

8    treatment provided for the underlying disabilities.  *See Burger v. Bloomberg*, 418 F.3d 882, 883 (8th

9    Cir. 2005); *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005); *Fitzgerald

10   v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005); *Grzan v. Charter Hosp. of Nw. Ind.*,

11   104 F.3d 116, 121-22 (7th Cir. 1997).[6]  The above cases suggest that the inapplicability of the ADA

12   and RA to medical decisions lies in the inability to reconcile the essential elements of an ADA or

13   RA claim with the inherent issues in providing medical treatment.  The concern is that such a claim

14   simply makes an end run around the Eighth Amendment.  *See generally Bryant v. Madigan*, 84 F.3d

15   246, 249 (7th Cir. 1996) ("[C]ourts have labored mightily to prevent the transformation of the Eighth

16   Amendment's cruel and unusual punishments clause into a medical malpractice statute for prisoners.

17   We would be exceedingly surprised to discover that Congress had made an end run around these

18   _____

19   [4]    Plaintiff also alleges in his complaint that prison officials denied his medical requests to
20   sleep in a lower bunk.  However, plaintiff fails direct to the court to any facts in the record to support such
     allegations.  *See Schneider v. TRW, Inc.*, 938 F.2d 986, 990 (9th Cir. 1991) ([T]he law of this circuit . . .
21   recognizes that a district court is under no obligation to mine the full record for issues of triable fact.") (citing
     *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir.
     1988)).

22
     [5]    The court does not address whether the facts give rise to a claim under 42 U.S.C. § 1983.
23   Plaintiff brings his claims under the ADA and RA.  *See* #10; *O'Guinn v. Lovelock Correctional Center*, 502
     F.3d 1056, 1060 (9th Cir. 2007) ("Courts should not undertake to infer in one cause of action when a
24   complaint clearly states a claim under a different cause of action.").

25   [6]    The court notes that the Ninth Circuit has addressed the issue in a related but unpublished
26   disposition noting that "inadequate medical care does not provide a basis for an ADA claim unless medical
     services are withheld by reason of a disability." *Marlor v. Madison County Idaho*, 50 Fed. Appx. 872, 874
27   (9th Cir. 2002).  The court merely notes the existence of the case in compliance with rules of this circuit.
     *See* Ninth Circuit Rule 36-3(c)(ii) ("[Unpublished dispositions issued before January 1, 2007] may be cited
28   to this Court or by any other courts in the circuit for factual purposes, such as . . . the existence of a related
     case.").

decisions in the [ADA].").

For example, under the ADA and RA, a plaintiff is required to demonstrate that he was "otherwise qualified" for the benefits sought and that he was denied those benefits "solely by reason of disability." *See Fitzgerald*, 403 F.3d 1134. As the Tenth Circuit noted:

> Such a plaintiff must prove that he or she was discriminatorily denied medical treatment because of the [handicap] and, at the same time, must prove that, in spite of the [handicap], he or she was "otherwise qualified" to receive the denied medical treatment. Ordinarily, however, if such a person were not so handicapped, he or she would not need the medical treatment and thus would not "otherwise qualify" for the treatment.

*Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1493 (10th Cir. 1992), *as cited in Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 121 (7th Cir. 1997). "[T]he term *otherwise qualified* cannot ordinarily be applied in the comparatively fluid context of medical treatment decisions without distorting its plain meaning." *Id.* (quoting *United States v. Univ. Hosp., State University of New York at Stony Brook*, 729 F.2d 144 (2d Cir.1984)). "[W]here the handicapping condition is related to the condition to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was discriminatory." *Id.*

District courts within this circuit have underscored that the ADA and RA afford disabled inmates legal rights regarding access to programs and activities enjoyed by all, not a general federal cause of action for challenging the medical treatment of their underlying disabilities. *See e.g., Mahoney v. Hammond*, 2010 WL 2720759, at *2 (E.D. Wash. June 15, 2010) ("[T]reatment, or lack of treatment for Plaintiff's [underlying medical condition] does not provide a basis upon which to impose liability under the ADA."); *Copelton v. Correctional Corp. of Am.*, 2009 WL 4063907, at *6 (D. Mont. Nov. 23, 2009) (same); *Sartain v. Myers*, 2008 WL 731046, at *9 (C.D. Cal. Mar. 13, 2008) (same); *Johnson v. Yates*, 2008 WL 544573, at *3 (E.D. Cal. Feb. 26, 2008) (same). In *McNally v. Prison Health Servs., Inc.*, 46 F. Supp. 2d 49, 58 (D. Me. 1999), the district court provided a cogent analysis differentiating an actionable claim from a non-actionable one. In *McNally*, the plaintiff, an HIV-positive inmate, asserted that defendants denied him immediate access to prescribed medications, a service provided to all detainees. *Id.* The facts before the *McNally* court indicated that the defendants disbursed medications to HIV-positive inmates in a

1    manner totally different from that of HIV-negative inmates and, furthermore, that no medical reason

2    existed to support defendants' differing treatment. *Id.* The court denied summary judgment, finding

3    that a jury could infer that defendants' failure to disburse prescription medication to HIV-positive

4    inmates in accordance with the overall practice of the jail was because of their disability. *Id.* In

5    other words, the *McNally* plaintiff did not merely challenge the adequacy of treatment with respect

6    to his HIV-positive condition, but he challenged his access to the system-wide distribution program

7    of prescription medication to which all inmates were qualified. Moreover, he presented evidence

8    to demonstrate that his access may have been denied simply *because of* his condition.

9           Here, plaintiff argues that the above-cited cases are inapposite. Plaintiff maintains that these

10   cases dealt with plaintiffs who had received medical care and challenged the adequacy of it, but, in

11   this case, defendants' allegedly blanket denial of mental health treatment does not constitute a

12   "medical decision" (#78, p. 10 n.5). However, an overall denial of medical care as well as

13   inadequate medical care falls squarely within the jurisprudence dealing with the provision of medical

14   care in prisons. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jett v. Penner*, 439 F.3d 1091, 1096

15   (9th Cir. 2006). Thus, the court remains convinced that this claim concerns the adequacy of medical

16   treatment and not discrimination. Like medical care in general, mental health treatment and services

17   are programs within the reach of the ADA and RA. *See Lee*, 250 F.3d at 691. However, unlike

18   general medical care, mental health treatment exists *for those with a mental disability who qualify*

19   *for treatment*. While all prisoners may be otherwise qualified for medical care in general, only those

20   exhibiting mental health issues are otherwise qualified for mental health services. Plaintiff does not

21   assert that he was denied all medical care, and, in fact, defendants produce plaintiff's medical record

22   which reveals continued medical treatment over the entire period of his incarceration (#81 (*sealed*)).

23   In this lawsuit, plaintiff predominately focuses on defendants' denial of and his exclusion from

24   mental health treatment.[7] This is a claim that centers on the adequacy of medical care provided to

25   _____

26          [7]      Plaintiff also argues that NDOC policies which, in part, require inmates to apprise mental
     health staff of their condition upon entry to the NDOC places an undue burden on inmates, like plaintiff, who
27   are unable to perform such an action (#75, pp.15-16). However, this argument suffers from the same flaw
     as plaintiff's overall argument in that this policy does not unduly burden plaintiff in his access to programs
28   for which he would otherwise qualify. Assuming without deciding that the policy burdens inmates, plaintiff

1    plaintiff, not a discriminatory denial.[8] *See Calloway v. Contra Costa County Jail Correctional*

2    *Officers*, 2007 WL 134581, at *34 (N.D. Cal. Jan. 16, 2007) ("The gravamen of [the] claim is that

3    as a result of Defendants' failure to deliver adequate medical care to him, he was denied the

4    opportunity to engage in regular prison life, because he was sick . . . . [T]he Court is not persuaded

5    that this is an actionable ADA/RA claim . . . [T]he benefits and services that Plaintiff wished to

6    receive are for his disability; he does not, in any real sense, allege that he was denied benefits and

7    services *because of* his disability."). Thus, plaintiff's claim does not arise under the ADA or RA.

8           Assuming without deciding that plaintiff's ADA and RA claims can be raised with respect

9    to his denial from mental health services, plaintiff's claim still fails. Plaintiff does not produce any

10   material issues of fact with respect to why defendants have denied plaintiff mental health treatment.

11   Plaintiff points to certain portions of plaintiff's medical chart where prison officials labeled his

12   behavior as "rude" and "annoying" and argues that such labels demonstrate (or at least give rise to

13   a permissible inference) that  prison officials denied care because of behavioral manifestations of

14   plaintiff's disability. *See* #78, Ex. 10. The court first notes that what plaintiff refers to as "labels"

15   are the psychiatric evaluator's descriptions of plaintiff's behavior offered in the midst of a psychiatric

16   evaluation. *Id.* The court next notes that the lack of evidence linking these observations of

17   plaintiff's behavior with any alleged subsequent denial of mental health treatment. It is entirely too

18   speculative to find that such comments made in the midst of a psychiatric evaluation are the ongoing

19   cause of plaintiff's denial of care; they are mere notes in his file describing his behavior in the course

20   of treatment – not reasons as to why treatment was allegedly denied. Thus,  there is no material issue

21   with respect to plaintiff claim under the ADA and RA because he presents no facts to demonstrate

22   that he was denied mental health care *on the basis of* or *because of* his disability. *See Wyatt v.*

23   _____

24   has only stated that it burdens mentally ill inmates in their pursuit of mental health care. In other words,
     plaintiff frames a denial of medical treatment for the underlying disability as an ADA and RA claim. As

25   previously discussed, the court finds that such a claim is not cognizable.

26        [8]     Plaintiff also contends that a small amount of mental health treatment would allow plaintiff
     to control his behavior to such an extent that he would qualify for more substantial treatment. Admittedly,

27   a little treatment may calm plaintiff's irritability. Yet, undertaking to determine what amount of treatment
     plaintiff needs to obtain the best result underscores the point – what is at issue here are medical decisions

28   in relation to plaintiff's care, not discrimination.

1   *County of Butte*, 2007 WL 1100504, at *8 (E.D. Cal. Apr. 11, 2007) (dismissing plaintiffs' claim of

2   discrimination for lack of factual content supporting denial because of disabilities).

3        In addition to his exclusion and denial from mental health treatment, plaintiff also maintains

4   that he has been denied access to other prison programs.  On its face, this allegation would appear

5   to state a valid claim.  The denial of or exclusion from a prison program on the basis his mental

6   disability would give rise to liability under the ADA.  *See e.g., Duffy*, 98 F.3d at 453-57 (hearing

7   impaired inmate's denial of an interpreter at classification hearing cognizable claim under ADA and

8   RA).  However, plaintiff does not present any evidence as to an actual exclusion from or denial of

9   any benefit or program.  Plaintiff contends that absent mental treatment he was unaware that

10  programs even existed and that his state of unawareness ostensibly functions as an exclusion or

11  denial.  The court finds such an argument too attenuated.  The court cannot find, nor has plaintiff

12  provided, any legal authority which holds that a defendant's failure to treat a  plaintiff's mental

13  disability, the effects of which renders him unaware of a program or service, constitutes a cognizable

14  exclusion from or denial of available programs.

15       Therefore, the court finds that defendants are entitled to judgment as a matter of law and

16  grants summary judgment in defendants' favor on plaintiff's ADA and RA claims.[9]

17      **2.    Breach of Plea Agreement**

18       "A court may decline to exercise supplemental jurisdiction over related state-law claims once

19  it has 'dismissed all claims over which it has original jurisdiction.'"  *Ove v. Gwinn*, 264 F.3d 817,

20  826 (9th Cir. 2001) (quoting 28 U.S.C. § 1367(c)(3)); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S.

21  343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial,

22  the balance of the factors to be considered under the pendent jurisdiction doctrine - judicial economy,

23  convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the

24  remaining state-law claims.").

25       Here, the court finds that 28 U.S.C. § 1367(c)(3) is satisfied because the court has dismissed

26

27      [9]   Because the court finds that plaintiff's claim does not properly arise under the ADA and RA,
the court does not comment on whether defendants' behavior exhibited deliberate indifference.  Nor does
28  the court comment on defendants' argument that the Eleventh Amendment bars plaintiff's claim.

1    all plaintiff's federal claims.  In addition, comity plays a significant role in the district court's

2    discretion to decline jurisdiction in this instance.  In light of the Nevada Supreme Court's

3    invalidation of the amended statutes under which plaintiff entered his original plea, the court finds

4    that the validity and enforceability of plaintiff's subsequent plea (which appears to have incorporated

5    the terms of the original plea) is best left to the determination of a state tribunal.

6         Therefore, the court dismisses plaintiff's state law claim without prejudice for lack of

7    jurisdiction.

8                 **III. CONCLUSION**

9         Based on the foregoing and for good cause appearing, the court concludes that plaintiff's

10    claim concerning his alleged denial and apparent lack of mental health treatment is not properly

11    raised under the ADA and RA.  Therefore, the court finds that summary judgment in favor of the

12    defendants is proper.  As for plaintiff's remaining state law claim for breach of contract, the court

13    declines to exercise supplemental jurisdiction and dismisses the claim without prejudice.

14         The parties are advised:

15         1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,

16    the parties may file specific written objections to this report and recommendation within fourteen

17    days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and

18    Recommendation" and should be accompanied by points and authorities for consideration by the

19    District Court.

20         2.    This report and recommendation is not an appealable order and any notice of appeal

21    pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

22              **IV.  RECOMMENDATION**

23         **IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment

24    (#74) be **GRANTED** in part and **DENIED** in part, that:

25             •    summary judgment is granted to defendants on all federal
                claims;

26

27             •    summary judgment is denied on plaintiff's breach of contract
                claim.

28         **IT IS FURTHER RECOMMENDED** that plaintiff's motion for summary judgment, or in

1  the alternative, for partial summary judgment (#75) be **DENIED**.

2      **IT IS FURTHER RECOMMENDED** plaintiff's state law claim for breach of contract be

3  **DISMISSED without prejudice** for lack of jurisdiction.

4  **DATED**:      August 26, 2010.

5

6  _____

7                              **UNITED STATES MAGISTRATE JUDGE**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28